IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
CASE NO: _____

| | |
|---|---|
| Southeast Crescent Shipping Company, D/B/A Metro Ports,<br><br>         Plaintiff,<br><br>  vs.<br><br>North Carolina State Ports Authority,<br><br>         Defendant. | **COMPLAINT** |

Plaintiff Southeast Crescent Shipping Company d/b/a Metro Ports ("Plaintiff" or "Metro Ports"), by its attorneys, complains of Defendant North Carolina State Ports Authority ("Defendant" or "NCSPA"), upon information and belief, as follows:

### Parties and Jurisdiction

1. This action concerns claims against NCSPA for breaches of lease agreements of certain premises situated within the Port of Wilmington, in Wilmington North Carolina, which Plaintiff rented to store cargo it handles for its customers. The Lease, inclusive of amendments, is attached as <u>Exhibit A</u>. As a result of NCSPA's breaches of the Lease, certain cargo belonging to Plaintiff's customer was damaged. This resulted in a claim by Plaintiff's customer against Plaintiff, which Plaintiff settled after NCSPA refused to defend the claim, following Plaintiff's tender of the claim's defense to NCSPA. Plaintiff now seeks indemnity from NCSPA because its breach of the Lease caused the damages to Plaintiff's customer's cargo, and resulting damages to Plaintiff, for which NCSPA is ultimately responsible.

2. Plaintiff is a Delaware corporation with a principal place of business in Long Beach, California, authorized to conduct business in the state of North Carolina, and which maintains a place of business in Wilmington, North Carolina. At all times relevant hereto, Plaintiff or its predecessor was a party to the subject Lease agreement with Defendant.

3. NCSPA is an agency of the State of North Carolina, and operates the State Port at Wilmington, North Carolina, where the subject leasehold lies.

4. On information and belief, NCSPA is an agency of the State of North Carolina organized and operating pursuant to N.C. Gen. Stat. §136-260, *et seq.*, having a principal office at 2202 Burnett Boulevard, Wilmington, New Hanover County, North Carolina.

5. Under N.C. Gen. Stat. § 136-262 ( "Powers of Authority"), NCSPA is empowered to, *inter alia*, "*. . . sue and be sued, to make contracts, and to . . . rent, lease, buy, own, acquire, mortgage, otherwise encumber, and dispose of such property, real or personal, as said Authority [i.e., NCSPA] may deem proper to carry out the purposes . . [.]*"

6. NCSPA operates a maritime terminal at the Port of Wilmington, North Carolina involved in the shipping of goods and cargo by ocean-going vessels, certain of which facilities were leased to Plaintiff under the Lease.

7. The acts and omission of NCSPA complained of herein occurred within the Southern Division of the United States District Court for the Eastern District of North Carolina.

8. The subject Lease provides "*the forum for resolution [of disputes] shall be the Southern (Wilmington) Division of the Eastern District of the United States District Court . . . [,]*" making venue proper in this Court, evidencing NCSPA's consent to its

jurisdiction and waiver of any sovereign immunity defense, if the same were otherwise applicable.

9. This action is brought by Plaintiff against a citizen of a different state, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Therefore, this Court has diversity jurisdiction over this dispute pursuant to 28 U.S.C. § 1332.

**Facts**

10. The allegations in the paragraphs 1-9 above are re-alleged as if fully set forth herein.

11. At all material times, Plaintiff (or its predecessor) and Defendant were parties to a lease which is the subject of this suit. The Original Lease (defined below) and all amendments thereto (described below) are hereafter collectively referred to as the "Lease." (Exhibit A)

12. The Lease was originally entered between Defendant and Cape Fear Bulk, LLC ("CFB") (Plaintiff's predecessor) on 1 January 2005 (the "Original Lease").

13. On or about 31 January 2009, CFB merged with and into Plaintiff, with Plaintiff being the surviving entity under governing law.

14. On or about 1 July 2015, the Original Lease was amended (the "First Amendment").

15. On or about 11 July 2018, the Original Lease was amended a second time (the "Second Amendment").

16. On or about 6 December 2019, the Original Lease was amended a third time (the "Third Amendment").

3

17. Under the Lease, Plaintiff rented warehouse C-1 ("C-1") at the Port of Wilmington from NCSPA.

18. C-1 is an older, "big-box"-like, empty, cavernous warehouse used to store bulk fertilizer cargo.

19. Plaintiff sub-leased a portion of C-1 to one of its customers, Ben Trei Fertilizer Company, LLC d/b/a Eurochem North America ("Eurochem"), for storage of Eurochem's pelletized fertilizer cargo. Plaintiff's sub-lease contract with Eurochem is attached hereto as Exhibit B.

20. Several years prior to the loss complained of in this case, the roof of C-1 leaked and damaged cargo of other customers, and Plaintiff made claims for this cargo damage against NCSPA, which NCPSA settled.

21. As part of one such settlement, the parties agreed to amend the Original Lease, (as then already modified by the First Amendment), resulting in the "Second Amendment." Under the Second Amendment, the NCSPA would continue to be responsible for cargo damage in C-1 until about $760,000 in certain "Roof Repairs and Replacements" were completed by Plaintiff, or a certain date which was considered enough time for Plaintiff to repair C-1's roof and be reimbursed by the NCSPA.

22. Plaintiff had begun roof repairs on C-1 when Hurricane Florence struck on September 14, 2018, ripping off part of the roof and an entire wall of C-1, completely halting Plaintiff's repair efforts until the NCSPA's insurance carrier could adjust a claim for damages to C-1.

23. The delay in Plaintiff being able to begin work on C-1 was not due to any fault of Plaintiff.

24. In accordance with the Lease, and due to Hurricane Florence, NCSPA, through its authorized agent, declared "Force Majeure" under the Lease (Lease Art. 12), affecting many contracts on or at the Port or Wilmington, including the Lease. (See Force Majeure Declaration - Exhibit C).

25. None of the cargo at issue in this case was present in C-1 when NCSPA declared Force Majeure as a result Hurricane Florence.

26. In its Force Majeure notice, Defendant admitted not only that this Force Majeure declaration was related to "cargo," and that it affected the duties of the parties under the Second Amendment, but also that this would negatively affect Plaintiff's ability to timely finish the roof repairs as previously agreed. It said, for example,

> "*Below is our force majeure statement for hurricane Florence <u>as it relates to cargo</u> . . .* **You know we have a new agreement relating to the maintenance of C1**. *Since the damage is covered under our insurance, plans have begun to repair the roof and walls*. *I believe Mark Blake may have relayed this to Chris P. We don't have a time line as yet, but this will be a top priority. We will keep you informed of the progress.* **This of course will have an effect on your work** *with the applying the roof coating, so future coordination will be needed.*" Ex. C (emphasis added)

27. Because NCSPA's insurance carrier covered the repairs to C-1, NCSPA took back over responsibility for roof repairs to C-1, and Plaintiff was prevented from conducting the repairs according to the Lease. It took Defendant at least 6 months to even <u>begin</u> work on the roof, during all of which time Plaintiff could not begin its own work on the roof.

28. Following Hurricane Florence and the NCSPA's Force Majeure declaration, NCSPA did not award a design-build contract for hurricane related repairs to C-1 until May of 2019, and repairs to the North end of C-1 did not commence until August of 2019

– one year after Hurricane Florence. As of September of 2020, the roof panels (to be reinstalled by NCSPA or its contractor) were still not in place in C-1, which prevented Plaintiff from coating them and making C-1 fit to store cargo pursuant to the repair agreement made in the Second Amendment.

29. While C-1 was still undergoing repair, however, Metro Ports' business had to continue. Plaintiff's sub-tenant tenant in C-1, Eurochem, began bringing its fertilizer into C-1 in February of 2019 pursuant to Eurochem's contract with Plaintiff.

30. Due to NCSPA's Force Majeure declaration, the NCSPA insisted that Metro Ports refrain from beginning its contractually required roof repairs, and Metro Ports agreed to this in consideration of NCSPA being allowed to perform its repairs on C-1 which were covered by its insurer.

31. NCSPA's attempts at roof repairs for C-1 continued through 2019. July and August of 2019 were very rainy. During this rainfall, water flooded heavily down through defects in the roof system of C-1, which NCSPA had yet to finish repairing, resulting in Eurochem's cargo getting wet, suffering damage, losing value and ultimately resulting in Eurochem's claim against Plaintiff, which was settled and for which Plaintiff now seeks indemnity, based on NCSPA's failure to repair C-1's roof.

32. After discovering that Eurochem's cargo got wet and damaged, Plaintiff had it surveyed to determine the cause and source of water ingress, which such survey determined was the damaged roof of C-1 that NCPSA failed to timely repair and which Plaintiff was prevented from repairing by the NCSPA. The NCSPA was invited to attend and participate in the survey discussed above but did not attend.

33. Plaintiff's customer, Eurochem, had some 11,000 tons of NK fertilizer cargo in C-1 in July of 2019, and they claimed that all of it was damaged due to C-1's leaky roof for which Plaintiff was responsible under the sub-lease of C-1.

34. Due to the damage, the cargo could not be easily sold, taking almost two years to sell, at discounts of between $100 and $200/ton. Ultimately, Eurochem claimed $1,800,000 in losses due to water damaged cargo stored in C-1.

35. Plaintiff timely notified the NCSPA of Eurochem's claim.

36. Eurochem demanded arbitration under its sub-lease contract of C-1 with Plaintiff but first requested mediation, which Plaintiff attended. Plaintiff notified NCSPA of the mediation and invited it to attend to protect its interests, but the NCSPA refused to attend.

37. At mediation, Eurochem produced the invoices to customers to prove its losses against a credible showing of the fair market of the cargo (absent damage). Based primarily on Plaintiff's efforts to mitigate the claim, the claim was settled for USD $900,000 on 7 May 2021.

38. The NCSPA later denied responsibility for the damage to Eurochem's cargo, claiming that it had only assumed responsibility for cargo damage through 31 January 2019, under the Second Amendment, and not beyond.

39. In various correspondence, however, the NCSPA admitted and confirmed that its Force Majeure Declaration applied to the repairs to C-1's roof (and therefore to relieve the deadlines applicable to Plaintiff), stating that "*responsibility . . . for the roof, roofing system and maintenance of building C-1 as set forth in the Lease*" did not transfer over to Metro Ports in January of 2019 as originally planned, but was delayed until September

7

Case 7:22-cv-00067-FL   Document 1   Filed 04/26/22   Page 7 of 9

21, 2020, well after the rains which caused the cargo damage. Ex. D (9/24/18 email from NCSPA to Plaintiff).

40. Specifically, on September 18, 2020, Defendant's Regional Director, Real Estate & Planning and authorized agent wrote to Plaintiff that:

> Dave. Thank you for acknowledging that the C-1 roof repair, gutter, and down spout alterations and the north end rebuild have been completed. NCSPA agrees that, *effective September 21, 2020, Southeast Crescent will assume responsibility, from NCSPA, for the roof, roofing system, and maintenance of building C-1 as set forth in the lease provisions for warehouse C-1, dated January 1, 2005, and as amended on July 11, 2018*, excepting the ongoing column and A-frame repairs as described in Amendment #3. NCSPA agrees that Southeast Crescent does not have responsibility for (i) the maintenance and repair of the storm water drainage system at the leased area and (ii) the railroad tracks and roads at or around the leased area. Thanks Again, Stephanie (Ayers) (emphasis added). Ex. D.

41. Based on the Second Amendment, as modified by the NCSPA Force Majeure Declaration and confirmed by NCSPA in the email quoted above, Defendant is responsible for cargo damage in C-1 during which Eurochem's cargo was damaged.

42. NCSPA is liable to indemnify Plaintiff for the $900,000 it was forced to pay to settle it customer's cargo damage claim.

43. In addition to the $900,000 it paid to settle Eurochem's cargo damage claim, Plaintiff suffered other losses in the reconditioning of the damaged Eurochem cargo, which resulted in a reduction of the claim it had to pay Eurochem which was initially $1,800,000.00.

### First Cause of Action – Breach of Contract by NCSPA

44. The allegations in the paragraphs 1-43 above are re-alleged as if fully set forth herein.

45. The Lease entered into by Plaintiff and NCSPA is a binding contract.

46. Defendant breached the Lease by failing to timely repair C-1's roof, and preventing Plaintiff from fixing the roof, which resulted in cargo damage claims being asserted against Plaintiff, which Plaintiff was forced to settle and pay.

47. Defendant is responsible to indemnify Plaintiff for $900,000 (i.e., the settlement amount for the cargo loss paid to Eurochem) and such other damages as will be shown at trial.

## **PRAYER**

WHEREFORE, Plaintiff prays:

a. That judgment be entered for Plaintiffs and against NCSPA in an amount in excess of $900,000.00, exclusive of interest and costs, plus pre-judgment and post-judgment interest, collection and recovery costs, attorneys' fees, and other amounts as are or may become due and owing, plus such interest, fees and costs as allowed by law all as to be shown at trial.

b. That this Honorable Court grant Plaintiffs such other and further relief as the Court may deem just and proper under the circumstances.

Dated: 26 April 2022

**CLARK, NEWTON & EVANS, P.A.**
*Counsel for Plaintiff*
/s/ Don T. Evans, Jr.
NC Bar No. 19003
/s/ Seth P. Buskirk
NC Bar No. 36664
509 Princess St.
Wilmington, North Carolina 28401
Telephone: (910) 762-8743
Facsimile: (910) 762-6206
dte@clarknewton.com
spb@clarknewton.com