IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:22-CV-67-FL

| | |
|---|---|
| SOUTHEAST CRESCENT SHIPPING COMPANY d/b/a Metro Ports, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )     ORDER<br>) |
| NORTH CAROLINA STATE PORTS AUTHORITY, | )<br>)<br>) |
| Defendant. | )<br>) |

This matter is before the court on defendant's motion to dismiss pursuant to Rule 12(b)(1), (2), and (6) (DE 16), and on plaintiff's motion for leave to file surreply (DE 21). The issues raised are ripe for ruling. For the following reasons, defendant's motion is denied and plaintiff's motion is terminated as moot.

## STATEMENT OF THE CASE

Plaintiff commenced this breach of contract action on April 26, 2022, and filed an amended complaint on June 30, 2022, asserting that defendant breached the terms of a lease between the parties (the "lease") involving a warehouse for storage of bulk fertilizer cargo (the "warehouse") at the Port of Wilmington, North Carolina. Plaintiff asserts that defendant breached the lease by failing to timely repair the warehouse's roof, preventing plaintiff from completing repairs of the same, and incorrectly repairing the warehouse's roof and gutter system, resulting in cargo damage claims being asserted by plaintiff's customer against plaintiff. Plaintiff claims that defendant is responsible for indemnifying plaintiff for $900,000 paid to settle such claims, and other damages, plus interest, costs and fees.

Defendant filed the instant motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction,[1] relying upon an appendix containing North Carolina pattern jury instructions.[2] Plaintiff responded in opposition and defendant replied. Thereafter, plaintiff filed the instant motion for leave to file a surreply, relying upon a proposed surreply, which motion defendant opposes.

## STATEMENT OF THE FACTS

The facts alleged in the complaint[3] may be summarized as follows. Plaintiff is a Delaware corporation with a principal place of business in Long Beach, California, and with a place of business in Wilmington, North Carolina. At all times relevant hereto, plaintiff or its predecessor was a party to the subject lease with defendant, which is an agency of the State of North Carolina, operating "the State Port at Wilmington, North Carolina, where the subject leasehold lies." (Compl. ¶ 3).

The lease was "originally entered between [d]efendant and Cape Fear Bulk, LLC ([p]laintiff's predecessor)" on January 1, 2005. (Id. ¶ 13). On January 1, 2009, Cape Fear Bulk, LLC, "merged with and into [p]laintiff, with [p]laintiff being the surviving entity under governing law." (Id. ¶14). The parties executed three amendments to the lease on July 1, 2015, July 11, 2018, and December 6, 2019.

Under the lease, plaintiff rented the warehouse from defendant, which warehouse is "an older, 'big-box'-like, empty, cavernous warehouse used to store bulk fertilizer cargo." (Id. ¶ 19). Plaintiff

---

[1] Although the motion also references Rule 12(b)(2), the motion does not assert a lack of personal jurisdiction as a basis for dismissal, and defendant does not discuss in its briefs any reason to dismiss this case for lack of personal jurisdiction. Accordingly, the court does not analyze herein personal jurisdiction issues.

[2] The court denied as moot an earlier motion to dismiss filed by defendant upon filing of plaintiff's amended complaint. Scheduling conference activities also were stayed upon filing of the first motion to dismiss.

[3] Hereinafter, all references to the "complaint" in the text or "Compl." in citations in this order are to the amended complaint (DE 15) unless otherwise specified.

"provided a portion of [the warehouse] to one of its customers," Eurochem, for storage of Eurochem's pelletized fertilizer cargo. (Id. ¶ 20).

"Several years prior to the loss complained of in this case, the roof of [the warehouse] leaked and damaged cargo of other customers, and [p]laintiff made claims for this cargo damage against [defendant], which [defendant] settled." (Id. ¶ 22). "As a material term of one such settlement of a claim by [p]laintiff against [defendant] for cargo loss, the parties bargained for and agreed" upon the second amendment to the lease, dated July 11, 2018, (the "second amendment"). In pertinent part, the second amendment provides defendant "will be responsible for cargo damage claims caused by water infiltration from failures in the roof," until such time that certain "Roofing System Repairs and Replacements" by plaintiff, described in the second amendment, "are completed, or until January 31, 2019, whichever comes first." (Second Amendment to Lease (DE 15-1) at 36).[4]

"Plaintiff had begun roof repairs on [the warehouse] when Hurricane Florence struck on September 14, 2018, damaging part of the roof, and completely halting [p]laintiff's repair efforts, until [defendant's] insurance carrier could adjust a claim for damages" to the warehouse. (Compl. ¶ 27). Defendant's activities "and its insurance carrier's activities after Hurricane Florence made it impossible for [p]laintiff to be able to continue work" on the warehouse. (Id. ¶ 28). "This was not due to any fault of [p]laintiff and rendered impossible the repair performance timeframe set out in the Second Amendment, and on which [defendant's] timeframe for cargo loss and damage liability was dependent." (Id.).

"Due to the damage caused by Hurricane Florence, and because of the impossibility of [p]laintiff then completing the repairs to [the warehouse] contemplated within the timeframe set out

---

[4] Page numbers in citations to documents attached to the complaint specify the page number of the docket entry specified by the court's case management / electronic case filing (CM/ECF) system, and not the page number(s), if any, showing on the face of the document.

3

in the Second Amendment, [defendant] declared 'Force Majeure' under the Lease (Lease Art. 12), affecting many contracts on or at the Port of Wilmington, including the Lease." (Id. ¶ 29). Notably, according to plaintiff, this "also governed the period of [defendant's] liability for cargo damage in [the warehouse], which was necessarily extended thereby." (Id.).

In its Force Majeure notice, in pertinent part, defendant stated:

> Below is our force majeure statement for hurricane Florence <u>as it relates to cargo</u> . . . <u>You know we have a new agreement relating to the maintenance of [the warehouse]. Since the damage is covered under our insurance, plans have begun to repair the roof and walls.</u> I believe Mark Blake may have relayed this to Chris P. We don't have a time line as yet, but this will be a top priority. We will keep you informed of the progress. <u>This of course will have an effect on your work</u> with the applying the roof coating, so future coordination will be needed.

(Id. ¶ 30 (quoting Ex. C (DE 15-3)) (emphasis added in complaint). According to plaintiff, "[b]ecause [defendant's] insurance carrier covered the repairs to [the warehouse], [defendant] took back over responsibility for roof repairs to [the warehouse], which prevented [p]laintiff from conducting the repairs according to the Lease, rendering impossible the [time]-frame for such repairs, on which [defendant's] period of cargo damage liability was based." (Id. ¶ 31).

Following Hurricane Florence and defendant's Force Majeure declaration, defendant did not award a design-build contract for hurricane related repairs to the warehouse until May 2019, and repairs to the north end of the warehouse did not commence until August 2019, approximately one year after Hurricane Florence. "As of September of 2020, the roof panels (to be reinstalled by [defendant] or its contractor) were still not in place in [the warehouse], which prevented Plaintiff from coating them and making the entirety of [the warehouse] fit to store cargo pursuant to the repair agreement made in the Second Amendment." (Id. ¶ 32).

During its ongoing roof repair work following the damage caused by Hurricane Florence, defendant allegedly decided to reconfigure the gutter system in the warehouse with new downspouts.

4

During the time of this work, plaintiff "met with engineers from [defendant] and determined that 90% of [the warehouse] was still fit for storage of the dry bulk 'Product' contemplated by the Original Lease." (Id. ¶ 34). The parties thus agreed to a 10% reduction in the rent term of the lease. Plaintiff's customer, Eurochem, then began bringing its fertilizer into the warehouse in February 2019.

Plaintiff further alleges that, due to the "Force Majeure declaration, and the impossibility Hurricane Florence created with respect to Plaintiff's performance under the Second Amendment, [defendant] insisted that Plaintiff refrain from continuing its contractually required roof repairs." (Id. ¶ 37). Plaintiff allegedly "agreed to this in consideration of [defendant] being allowed to perform its repairs on [the warehouse] which were covered by its insurer and an extension of the time-frame for which [defendant] would be liable for cargo damage and loss under the Lease pursuant to the Second Amendment." (Id.).

Defendant's attempts at roof repairs for the warehouse continued through 2019. During a very rainy period in July and August 2019, "water flooded heavily down through the new and . . . undersized downspouts which the [defendant] had installed as part of its repair efforts." (Id. ¶ 38). "This resulted in Eurochem's cargo getting wet, suffering damage, losing value and ultimately in Eurochem's claim against Plaintiff, which was settled." (Id.). "After discovering that Eurochem's cargo got wet and damaged, Plaintiff had it surveyed to determine the cause and source of water ingress," allegedly "which was [defendant's] negligent, incorrect and untimely repairs to the roof and its downspouts." (Id. ¶ 39). Plaintiff allegedly "had no knowledge of these defects until the damage from them was manifest." (Id. ¶ 38).

Eurochem claimed losses of $1,800,000 due to water damaged cargo. Plaintiff undertook expenses in excess of $200,000 to recondition the cargo. On September 18, 2020, defendant wrote to plaintiff regarding a change in responsibility for the warehouse roof and roofing system, stating:

5

> Thank you for acknowledging that the [warehouse] roof repair, gutter, and down spout alterations and the north end rebuild have been completed. [Defendant] agrees that, <u>effective September 21, 2020, [plaintiff] will assume responsibility, from [defendant], for the roof, roofing system, and maintenance of [the warehouse] as set forth in the lease provisions for [the warehouse], dated January 1, 2005, and as amended on July 11, 2018</u>, excepting the ongoing column and A-frame repairs as described in Amendment #3. [Defendant] agrees that [plaintiff] does not have responsibility for (i) the maintenance and repair of the storm water drainage system at the leased area and (ii) the railroad tracks and roads at or around the leased area.

(Compl. ¶ 47 (quoting Ex. D (DE 15-3))) (emphasis added in complaint). Plaintiff ultimately paid $900,000 to settle Eurochem's claim, May 7, 2021. According to the complaint, defendant did not participate in the settlement, and it "later denied responsibility for the damage to Eurochem's cargo, claiming that it had only assumed responsibility for cargo damage through 31 January 2019, under the Second Amendment, and not beyond, despite its contrary agreements and Force Majeure Declaration." (Id. ¶ 45).

## COURT'S DISCUSSION

A.   Standard of Review

A motion to dismiss under Rule 12(b)(1) may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Where, as here, a defendant raises a "facial challenge[ ] to [subject matter jurisdiction] that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts "the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge." Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018).

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly,

6

550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[5]

B.  Analysis

Defendant moves to dismiss plaintiff's action for failure to state a claim upon which relief can be granted because it contends multiple provisions in the lease bar plaintiff's contract claim. Defendant also argues that, to the extent plaintiff claims negligence, that claim must be dismissed due to sovereign immunity and lack of subject matter jurisdiction. The court addresses these arguments in turn below.

1.  Contract Claim

To state a claim for breach of contract, a "complaint must allege the existence of a contract between plaintiff and defendant, the specific provisions breached, [t]he facts constituting the breach, and the amount of damages resulting to plaintiff from such breach." Cantrell v. Woodhill Enterprises, Inc., 273 N.C. 490, 497 (1968).

"Interpreting a contract requires the court to examine the language of the contract itself for indications of the parties' intent at the moment of execution." State v. Philip Morris USA Inc., 363 N.C. 623, 631 (2009). "It is the general law of contracts that the purport of a written instrument is to be gathered from its four corners, and the four corners are to be ascertained from the language used in the instrument." Carolina Power & Light Co. v. Bowman, 229 N.C. 682, 693-94 (1949). Terms in a contract are to be "interpreted according to their usual, ordinary, and commonly accepted meaning."

---

[5] Internal citations and quotation marks are omitted from all citations unless otherwise specified.

Anderson v. Allstate Ins. Co., 266 N.C. 309, 312 (1966). "Where the terms of the contract are not ambiguous, the express language of the contract controls in determining its meaning and not what either party thought the agreement to be." Crockett v. First Fed. Sav. & Loan Ass'n, 289 N.C. 620, 631 (1976).

"When an agreement is ambiguous and the intention of the parties is unclear, however, interpretation of the contract is for" the factfinder. Farmers Bank v. Michael T. Brown Distribs., Inc., 307 N.C. 342, 347-48 (1983). "An ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC, 365 N.C. 520, 525 (2012). "Thus, if there is uncertainty as to what the agreement is between the parties, a contract is ambiguous." Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs., P.C., 362 N.C. 269, 273 (2008).

"Only when terms of a contract are ambiguous are courts authorized to apply rules of construction." Cosey v. Prudential Ins. Co. of Am., 735 F.3d 161, 169–70 (4th Cir. 2013) (applying North Carolina law). For example, "it is a fundamental rule of contract construction that the court gives effect to all of its provisions, if the court is reasonably able to do so." Wells Fargo Ins. Servs. USA, Inc. v. Link, 372 N.C. 260, 272 (2019). At the same time, "[a]ll instruments should receive a sensible and reasonable construction, and not such a one as will lead to absurd consequences or unjust results." De Bruhl v. State Highway & Pub. Works Comm'n, 245 N.C. 139, 145 (1956). In construing a contract, "note must be taken of the purpose to be accomplished, the situation of the parties when they made, and the subject-matter of the contract." Id. "[A] contract is to be construed as a whole with each provision considered in the context of the entire contract." Lattimore v. Fisher's Food Shoppe, Inc., 313 N.C. 467, 473 (1985).

Here, plaintiff has alleged facts in the complaint giving rise to each of the elements of a breach of contract claim. With respect to the existence of a contract, plaintiff alleges the lease including its amendments between plaintiff and defendant. Concerning the provisions breached, plaintiff alleges that defendant breached a provision of the second amendment to the lease providing that defendant "will be responsible for cargo damage claims caused by water infiltration from failures in the roof," and that the time frame for this responsibility was extended by further agreement of the parties, defendant's Force Majeure declaration, and impossibility and prevention of performance. (Compl. ¶¶ 25, 29-31, 37; DE 15-1 at 36). With respect to breach and damages, plaintiff alleges that defendant failed to assume responsibility for Eurochem's damage claim, resulting in damages to plaintiff in expenses in settling the claim itself.

Defendant's arguments to the contrary, addressed as follows, are unavailing because they all rely upon facts not alleged in the complaint, or they draw inferences and construe ambiguities in the lease in favor of defendant rather than plaintiff, as required at this juncture in the case.

      a.      Damage of Which Plaintiff Was Aware

Defendant argues that it has no obligation to indemnify plaintiff for property damage that was caused by defective conditions of which plaintiff was or should have been aware of before the property damage. In support of this argument, defendant relies upon a provision of the lease that states that defendant shall indemnify plaintiff for property damage that "may arise from or be caused directly or indirectly by . . . [a]ny dangerous, hazardous, unsafe or defective condition of, in or on the Leased Area, or any nature whatsoever," except that this provision excludes property damage from "conditions of which [plaintiff] was or should have been aware prior to the damage or injury in question." (DE 15-1 at 19) (the "indemnity provision"). Defendant contends that the indemnity

9

provision provides plaintiff no relief because plaintiff knew the warehouse's roof system was defective years before Eurochem's cargo was damaged, by virtue of prior leaks.

The indemnity provision upon which defendant relies, however, does not foreclose plaintiff's claim as a matter of law for two reasons. First, defendant draws inferences about plaintiff's knowledge in defendant's favor. It is reasonable to infer from the facts alleged in the complaint that plaintiff was not aware, and should not have been aware, of the defective condition of the roof at the time of the water intrusion in July and August 2019. In particular, plaintiff alleges that during its ongoing roof repair work following the damage caused by Hurricane Florence, defendant decided to "reconfigure the gutter system" in the warehouse with new downspouts, and that during the time of this work, plaintiff "met with engineers from [defendant] and determined that 90% of [the warehouse] was still fit for storage of the dry bulk 'Product' contemplated by the Original Lease." (Id. ¶¶ 33-34). This gives rise to a reasonable inference on the facts alleged that plaintiff was not aware, and should not have been aware, of the defective conditions that led to the cargo damage in July and August 2019.

Second, defendant draws inferences in its favor in construing the language of the contract. In particular, plaintiff does not seek recovery from defendant based solely on the indemnity provision, but also based upon the provision in the second amendment that defendant "will be responsible for cargo damage claims caused by water infiltration from failures in the roof." (DE 15-1 at 36) (the "cargo damage provision"). Drawing inferences in the light most favorable to plaintiff, this cargo damage provision supersedes in part the indemnity provision, or it at least creates an ambiguity that cannot be resolved at this stage of the case, under the rule of construction that "when general terms and specific statements are included in the same contract and there is a conflict, the general terms should give way to the specifics." Wood-Hopkins Contracting Co. v. N. Carolina State Ports Auth.,

284 N.C. 732, 738 (1974). Accordingly, the indemnity provision does not foreclose plaintiff's claim at this juncture.

      b.      Incidental and Consequential Damages

Defendant contends that plaintiff only seeks incidental and consequential damages, and that the lease bars recovery of such damages. Defendant relies upon a limitation of damages provision in the original lease stating that "[n]otwithstanding anything to the contrary elsewhere in this Lease, no party will be liable to any other party or person for incidental, consequential, special or punitive damages, . . . relating to any breach or alleged breach of this Lease." (DE 15-1 at 28) (the "limitation on damages provision"). However, the lease more specifically provides in the indemnity provision that defendant shall "indemnify, protect and save harmless [plaintiff] . . . from any and all claims and demands . . . including expenses incurred in defendant against legal actions, for . . . damage to property, including property . . . under the care and custody of [plaintiff]," which is the nature of damage alleged in this case. (DE 15-1 at 19). Likewise, the parties' statement in the second amendment that defendant "will be responsible for cargo damage claims," (DE 15-1 at 36), would serve no purpose if the limitations on damages provision barred all recovery based upon indemnification. Accordingly, where the combination of these provisions is susceptible to more than one reasonable interpretation, the court leaves for a later day construction of damage limitations in the lease.

      c.      Insurance Coverage Provision

Defendant argues that plaintiff waived its right to recover any amounts which were or should have been covered by its insurance, relying upon a provision in the lease under which plaintiff "waives all right to recovery against [defendant] for . . . loss or damage to the extent such loss or damage is covered by valid and collectible insurance . . . or would be covered by the insurance required to be

11

Case 7:22-cv-00067-FL   Document 25   Filed 03/06/23   Page 11 of 19

maintained under this Lease." (DE 15-1 at 17). In turn, the lease requires plaintiff to maintain at all times "commercial general liability insurance insuring [plaintiff] against . . . loss of or damage to property resulting from its activities on the Wilmington Port . . . with limits of not less than $1,500,000 per occurrence." (DE 15-1 at 16-17) (the "insurance coverage provision")

Defendant's argument based upon insurance coverage is an insufficient basis for dismissal at this juncture for multiple reasons. First, it presumes that the insurance coverage provision in the lease covers the damage for which plaintiff seeks recovery in this case. However, the insurance coverage provision expressly requires plaintiff to maintain "liability insurance insuring [plaintiff] against . . . loss of or damage to property resulting from <u>its activities</u> on the Wilmington Port." (DE 15-1 at 16) (emphasis added). Plaintiff does not allege in the complaint damage to property resulting from its own activities on the Wilmington Port, but rather damage resulting from defendant's activities. (Compl. ¶¶ 39-40).

Second, there is no allegation or evidence in the record at this juncture as to what "is covered" or "would be covered by the insurance required to be maintained under th[e] Lease." (DE 15-1 at 17). Plaintiff alleges that it, in fact, "had the insurance required" by the lease, (Compl. ¶ 44), but the nature and terms of that insurance is not alleged. Where the court must construe the allegations in the complaint in the light most favorable to plaintiff, dismissal on the basis of waiver or lack of insurance coverage is not warranted.

Third, where defendant urges a "construction" of the insurance coverage provision and the cargo damage provision to avoid a conflict between the two, (Def's Reply (DE 20) at 8), such construction must take place at a later juncture of this case. In particular, defendant argues that the two provisions are "easily read together, without conflict" if the court construes the cargo damage provision to state that defendant "pays for cargo damage claims caused by water infiltration . . . over

12

$1,500,000." (Id.). As an initial matter, such construction reads terms into the cargo damage provision that are not stated, and which terms the court cannot supply upon a motion to dismiss. See Carolina Power & Light Co., 229 N.C. at 693. In any event, to the extent the provisions create an ambiguity by their conflict, and a construction is required as defendant suggests, this construction must be conducted by the factfinder,[6] and not by the court upon a motion to dismiss. See Cosey, 735 F.3d at 169.

In sum, defendant's argument in reliance upon the insurance coverage provision is unavailing.

### d. Cargo Damage After January 31, 2019

Defendant argues that the lease does not make defendant liable for cargo damage after January 31, 2019, thus precluding recovery for cargo damage occurring in July and August 2019 as alleged in the complaint. The premise of defendant's argument, however, is flawed, where defendant construes lease terms in its favor and disregards allegations in the complaint under which the parties extended the time period for liability for cargo damage.

As an initial matter, plaintiff alleges that the parties agreed to modify the lease following Hurricane Florence in two respects: 1) the parties "agreed to a 10% reduction in rent based on [the warehouse's] condition and the ongoing repair efforts" by defendant, and 2) defendant "insisted that [p]laintiff refrain from continuing its contractually required roof repairs," and plaintiff "agreed to this in consideration of [defendant] being allowed to perform its repairs . . . and an extension of the time-frame for which [defendant] would be liable for cargo damage." (Compl. ¶¶ 35, 37). On the latter point, plaintiff alleges that the parties agreed to an extension of the cargo damage provision through September 2020, at which point plaintiff resumed responsibility for the roof. (Id. ¶ 47).

---

[6] "[A] suit against a State agency for a breach of contract shall be tried in the Superior Court of Wake County or in the jurisdiction of the court in which the work was done, without a jury." Wood-Hopkins Contracting Co. v. N. Carolina State Ports Auth., 284 N.C. 732, 739 (1974) (citing N.C. Gen. Stat. § 143-135.3).

13

Defendant contends that any such alleged agreement to extend the time of the cargo damage provision is unenforceable because it does not comply with the statute of frauds and because it is supported by insufficient consideration. Both contentions are unavailing at this juncture of the case. First, under the statute of frauds, all "leases and contracts for leasing lands exceeding in duration three years . . . shall be void unless said contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith." N.C. Gen. Stat. § 22-2. Likewise "[w]hen the original agreement comes within the Statute of Frauds, subsequent oral modifications of the agreement are ineffectual." Clifford v. River Bend Plantation, Inc., 312 N.C. 460, 465 (1984). In the complaint, however, plaintiff does not allege that the modification of the lease was "oral." (Compl. ¶¶ 35, 37).[7] Moreover, plaintiff alleges that the agreement of the parties was memorialized in "various correspondence," in which defendant "admitted an confirmed that its Force Majeure Declaration applied to the repairs to [the warehouse's] roof and its gutters (and therefore to relieve the deadlines applicable to [p]laintiff)." (Id. ¶ 46). Plaintiff further relies upon a letter from defendant in September 2020 confirming that plaintiff will take "responsibility . . . for the roof" back from defendant, in reference to the cargo damage provision, thereby indicating that defendant had maintained responsibility prior to that point. (Id. ¶ 47). Thus, drawing inferences in plaintiff's favor, the statute of frauds does not preclude plaintiff's claim.

Second, plaintiff's claim also does not fail as a matter of law due to lack of consideration. Consideration "consists of some benefit or advantage to the promisor, or some loss or detriment to the promisee." Penley v. Penley, 314 N.C. 1, 14 (1985). "[T]here is consideration if the promisee, in return for the promise, does anything legal which he is not bound to do, or refrains from doing

---

[7] Defendant cites to the statement in plaintiff's brief that the "Lease was amended three times in writing and also verbally." (Def's Reply (DE 20) at 4). However, the court considers factual allegations made in the complaint, not assertions by attorneys in the briefs, in evaluating whether a claim is stated.

anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not." Id. This standard is met here by the allegations that defendant "insisted that [p]laintiff refrain from continuing its contractually required roof repairs," and plaintiff "agreed to this in consideration of [defendant] being allowed to perform its repairs . . . and an extension of the time-frame for which [defendant] would be liable for cargo damage." (Compl. ¶ 37). Consideration thus is alleged in the form of plaintiff's actions in "refrain[ing] from continuing its contractually required roof repairs," something it allegedly "has a right to do." Penley, 314 N.C. at 14.[8]

Moreover, plaintiff has alleged facts sufficient to support an inference of modification of the lease terms based upon frustration purpose and prevention of performance. Under a frustration of purpose theory, performance "is excused whenever a fortuitous event supervenes to cause a failure of the consideration or a practically total destruction of the expected value of the performance." Brenner v. Little Red Sch. House, Ltd., 302 N.C. 207, 211 (1981). "The doctrine of commercial frustration is based upon the fundamental premise of giving relief in a situation where the parties could not reasonably have protected themselves by the terms of the contract against contingencies which later arose." Id. Similarly, "prevention by one party excuses nonperformance of an antecedent obligation by the adversary party, and ordinarily the party whose performance is thus prevented is discharged from further performance and may recover as in case of breach." Goldston Bros. v. Newkirk, 233 N.C. 428, 432 (1951).

---

[8] Defendant's assertion that the lease "implicitly required [plaintiff] to let [defendant] make those repairs," (Def's Reply (DE 20) at 5), is both beside the point and invites construction of ambiguous terms in the contract. Regardless of whether the lease implicitly required defendant to make the repairs, plaintiff alleges it also had a right to insist upon continuing repairs under the terms of the lease. The court leaves resolution of these competing allegations and inferences for determination upon a more complete record.

15

Case 7:22-cv-00067-FL    Document 25    Filed 03/06/23    Page 15 of 19

Here, plaintiff has alleged frustration of purpose due to the "Force Majeure declaration, and the impossibility Hurricane Florence created with respect to Plaintiff's performance under the Second Amendment," where defendant "insisted that Plaintiff refrain from continuing its contractually required roof repairs." (Compl. ¶ 37). In addition, plaintiff has alleged prevention because defendant "took back over responsibility for roof repairs to [the warehouse], which prevented [p]laintiff from conducting the repairs according to the Lease, rendering impossible the [time]-frame for such repairs, on which [defendant's] period of cargo damage liability was based." (Id. ¶ 31). In addition, "[a]s of September of 2020, the roof panels (to be reinstalled by [defendant] or its contractor) were still not in place in [the warehouse], which prevented Plaintiff from coating them and making the entirety of [the warehouse] fit to store cargo pursuant to the repair agreement made in the Second Amendment." (Id. ¶ 32).

Defendant argues that frustration of purpose does not apply because the "frustrating event was reasonably foreseeable," citing an exception to the doctrine. (Def's Reply (DE 20) at 6). Defendant asks, rhetorically, "Was it reasonably foreseeable that a hurricane (or other storm) could damage the roof of an old warehouse located on North Carolina's coast during the middle of hurricane season? Yes." (Id.). Defendant's argument, however, is replete with inferences drawn in its favor, and the foreseeability of the frustrating event in this instance is a factual question not suitable for resolution upon a motion to dismiss.

Defendant also argues that the parties contracted in reference to the risk involved in the frustrating event, relying upon another exception to the doctrine. According to defendant, the second amendment to the lease covered the risk for cargo damage claims due to water infiltration before January 2019, and the doctrine of frustration cannot act to change this allocation of risk. However, the instant exception applies "if the parties have contracted in reference to the allocation of the risk

involved in the frustrating event" Brenner, 302 N.C. at 211 (emphasis added). It is a question susceptible to diverging inferences, based on the allegations in the complaint, whether the parties so contracted, where the second amendment mentions neither a hurricane, nor a force majeur declaration, nor the need for plaintiff to take over responsibility of repairs, constituting the alleged frustrating events in this instance.

Defendant also argues that the prevention of performance doctrine does not apply because defendant did not act in excess of its legal rights by repairing hurricane damage. "[I]n order to excuse nonperformance, the conduct on the part of the party who is alleged to have prevented performance must be wrongful, and, accordingly, in excess of his legal rights." Goldston, 233 N.C. at 432. Here, however, plaintiff alleges defendant acted wrongfully and in excess of its legal rights, not merely in repairing hurricane damage, but in "decid[ing] to also reconfigure the gutter system in [the warehouse] blocking off the floor gutters and installing new downspouts within [the warehouse]." (Compl. ¶ 33). Plaintiff claims that "water flooded heavily down through the new and . . . undersized downspouts which the [defendant] had installed," and that water ingress was due to defendant's "incorrect and untimely repairs to the roof and its downspouts." (Id. ¶¶ 38, 39) (emphasis added).[9] Accordingly, plaintiff alleges sufficient facts to permit an inference at this juncture of prevention of performance.

In sum, where plaintiff has stated a claim for breach of contract, that part of defendant's motion seeking dismissal for failure to state a claim under Rule 12(b)(6) is denied.

---

[9] While plaintiff also asserts in the complaint that defendant's repairs were "negligent" and downspouts were "negligently" undersized, the court does not consider "legal conclusions, elements of a cause of action, . . . conclusions, or arguments" in determining the well-pleaded factual allegations. Nemet Chevrolet, Ltd., 591 F.3d at 255. The court addresses further in the next section of the analysis herein plaintiff's references to "negligent" conduct on the part of defendant.

17

2. Negligence

Defendant argues that if plaintiff asserts a claim for negligence it is barred by sovereign immunity. "As to claims sounding in negligence, North Carolina has vested exclusive jurisdiction in the North Carolina Industrial Commission." Stewart v. North Carolina, 393 F.3d 484, 490 n.3 (4th Cir. 2005); see N.C. Gen.Stat. § 143–291(a) ("The North Carolina Industrial Commission is hereby constituted a court for the purpose of hearing and passing upon tort claims against . . . departments, institutions and agencies of the State.").

Here, plaintiff does not assert a negligence claim in its complaint, and plaintiff does not purport to assert a negligence claim against defendant. Defendant's motion instead raises an issue as to the import of plaintiff's assertions of "negligent" actions on the part of defendant, for example, in the form of "negligently undersized downspouts," "actively negligent failure to repair" and "actively negligent modification" of the roof and gutter system. (Compl. ¶ 38). Such references in the complaint to the word "negligent," however, do not transform plaintiff's claim into a tort claim, where plaintiff seeks only to recover for breach of contract, and where the lease provides that "negligence" triggers certain responsibilities and indemnification on the part of defendant. (DE 15-1 at 8 (liability for cargo damage); 19 (indemnification)). Adjudication of plaintiff's breach of contract claim thus will require the court to determine through further proceedings to what extent the parties have, through the lease, "allocate[d] risks for economic loss themselves," and "bargain[ed] for coverage of that risk or of faulty workmanship by the promisor." Severn Peanut Co. v. Indus. Fumigant Co., 807 F.3d 88, 94 (4th Cir. 2015) (emphasis added). Thus, "North Carolina's economic loss doctrine . . . serves as a barrier to certain tort claims arising out of facts best considered through the lens of contract law." Id.; Crescent Univ. City Venture, LLC v. Trussway Mfg., Inc., 376 N.C. 54, 58 (2020) (noting that the "economic loss rule bars recovery in tort by a plaintiff against a promisor for his simple failure

18

to perform his contract, <u>even though such failure was due to negligence or lack of skill</u>") (emphasis added).

In sum, because plaintiff asserts no negligence claim, and the court cannot transform plaintiff's breach of contract claim into a tort claim, that part of defendant's motion seeking dismissal of a negligence claim on the basis of sovereign immunity is denied.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss (DE 16) is DENIED. In addition, where the court does not rely upon plaintiff's proposed surreply in addressing defendant's motion to dismiss, plaintiff's motion for leave to file surreply (DE 21) is TERMINATED as moot. In accordance with Federal Rule of Civil Procedure 12(a)(4), defendant must serve a responsive pleading to the complaint within 14 days of entry of this order.

SO ORDERED, this the 6th day of March, 2023.

_____
LOUISE W. FLANAGAN
United States District Judge